# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

UNITED STATES OF AMERICA,

        Plaintiff,   :  Case No. 1:11-cr-079
                           Civil Case No. 1:13-cv-775

                                   Chief Judge Susan J. Dlott
  - vs -                         Magistrate Judge Michael R. Merz

CHARLES L. PATTON,

        Defendant.   :

## REPORT AND RECOMMENDATIONS ON ORIGINAL AND AMENDED MOTIONS TO VACATE

This criminal case is before the Court on Defendant Patton's Amended Motion to Vacate under 28 U.S.C. § 2255 (Doc. No. 140). As ordered, the Government filed an Answer to the Amended Motion on April 1, 2014 (Doc. No. 143). Patton was granted twenty-one days to file a reply to the answer, but has not done so and the time expired April 25, 2014.

The case is also before the Court on Chief Judge Dlott's recommittal of the issues raised by Patton in his original § 2255 Motion, based on his objections (Doc. No. 144) to the Supplemental Report and Recommendations (Doc. No. 139).

1

**Claims in the Original § 2255 Motion**

The four grounds for relief originally pled are:

> **Ground One:** Jury venire, population of ethnic groups in counties and there were no African Americans as a juror.
>
> **Ground Two: Jurisdiction:** Defendant held in State of Ohio custody, from October 8, 2010 until May 23, 2011 on home confinement; when case was a federal matter at the start. Federal agents followed person of interest form [sic] Chicago, Illinois, to Cincinnati, Ohio, across three state lines and placed defendant in State of Ohio custody.
>
> **Ground Three:** statement made by DEA officer; evidence tampering by DEA officer.
>
> **Ground Four:** Rules of evidence

(Report, Doc. No. 134, quoting four claims for relief verbatim at PageID 788-89.)

The Report and Supplemental Report recommended that these four claims be dismissed with prejudice as procedurally defaulted because they could have been but were not raised on direct appeal (Doc. Nos. 134, 139). Although Patton has filed a twelve-page set of Objections with attachments, they do not address any argument to the recommendations of procedural default. That is, the Objections offer no reason why these four claims were not raised on direct appeal. The Magistrate Judge again recommends they be dismissed with prejudice.

**Claims in the Amended Motion**

Mr. Patton's claims in the Amended Motion are not set out in the form provided for § 2255 Motions but, as Patton notes, he is entitled to liberal construction of his pleadings as a *pro*

se litigant. *Williams v. CSX Transportation Co., Inc.,* 643 F.3d 502, 510 (6th Cir. 2011), *citing Federal Exp. Corp. V. Holowecki,* 552 US. 389, 402 (1998); *see also*, *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *McNeil v. United States,* 508 U.S. 106, 113 (1993).

All of Patton's claims in the Amended Motion are claims of ineffective assistance of counsel. The governing standard for ineffective assistance of counsel is found in *Strickland v. Washington*, 466 U.S. 668 (1984):

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

With respect to the first prong of the *Strickland* test, the Supreme Court has commanded:

> Judicial scrutiny of counsel's performance must be highly deferential. . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

466 U.S. at 689.

As to the second prong, the Supreme Court held:

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to overcome confidence in the outcome.

466 U.S. at 694. *See also Darden v. Wainwright*, 477 U.S. 168 (1986); *Wong v. Money,* 142 F.3d 313, 319 (6th Cir. 1998); *Blackburn v. Foltz*, 828 F.2d 1177 (6th Cir. 1987). *See generally* Annotation, 26 ALR Fed 218.

This Report will be organized around the particular attorney whose ineffectiveness is being alleged.

**James Maus**

Assistant Federal Public Defender James Maus was Patton's first attorney. Patton claims Maus was ineffective in his presentation of the Motion to Suppress Statements (Doc. No. 27). Patton's complaints are that the Government witnesses were called first which Patton says contravenes usual courtroom procedure.[1] This is incorrect. Although usually the party that makes a motion goes first, with a motion to suppress the Government proceeds first in the absence of a facially valid search warrant because the Government must first establish probable cause for the stop which resulted in a search or interrogation.

Patton claims that a video recording of what went on inside the police cruiser after he was stopped would have shown that he was not given Miranda warnings, but there is absolutely no showing that such a video existed. Patton notes that Maus did not object to the prosecutor's

---

[1] Patton's claims regarding Mr. Maus are set forth in his Motion to Amend, Doc. No. 140 at PageID 819.

obtaining background information about the stop from Government witnesses, but such background information was necessary to show probable cause for the automobile stop. No objection would have been well taken and it is not deficient performance to fail to make a meritless objection.

Patton also objects to the fact that Maus did not put him on the stand to deny the statements of Officer Baker. This can hardly be faulted as bad strategy because it would have given the prosecutor an opportunity to cross-examine Patton and to develop statements which could have been used to impeach Patton at trial.

Patton has not shown James Maus provided ineffective assistance of trial counsel and that claim should be dismissed.

**Peter Rosenwald**

After Mr. Maus withdrew, Peter Rosenwald was appointed to represent Mr. Patton. Patton's claims against Rosenwald appear at Doc. No. 140, PageID 820-21.

Patton claims Rosenwald was ineffective for not obtaining a plea bargain. As Government counsel points out, this claim is refuted by the record which shows that Mr. Rosenwald presented plea offers to Patton and attempted to persuade him to plead guilty. (See Doc. No 143, PageID 860 and record citations therein.)

Patton claims Rosenwald "fail[ed] miserably" in handling the question of the packaging in which the drugs he was accused of possessing were presented in Court and also the original video was not brought to court as demanded (Doc. No. 140, PageID 820). These allegations are

also refuted by the Government's citation to the trial record at Doc. No. 143, PageID 861. As noted above, Patton has never responded to the Government's Answer.

Patton asserts he gave Rosenwald an "arsenal" of information with which to cross-examine the co-defendant, Lester, but he does not say what that "arsenal" was or explain how it would have persuaded the jury that Patton was not guilty. The Government's Answer cites the record to show that Rosenwald did cross-examine Lester about his prior criminal record and the plea agreement he had made with the United States for his testimony against Patton (Answer, Doc. No. 143, PageID 861).

Finally, Patton objects to the admissions made by Rosenwald in his closing argument that Patton had talked with DEA Agent Baker and that he had thrown the package, which contained almost one-half kilogram of heroin from his car, rather than instead relying on Patton's claim he did not know what was in the package. This was a reasonable strategy since there was a video record which the jury had seen of Patton throwing the package out of his car. Counsel's tactical decisions are particularly difficult to attack. *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). Indeed, strategic choices by defense counsel are "virtually unchallengeable." *Buell v. Mitchell,* 274 F.3d 337, 359 (6th Cir. 2001), *quoting Meeks v. Bergen*, 749 F.2d 322, 328 (6th Cir. 1984). It is not ineffective assistance of trial counsel to concede facts which are virtually incontestable.

Patton complains that Rosenwald was called to testify at the first motion for new trial hearing and Patton was forced to waive attorney-client privilege and then asked to take the stand. Any difficulties with this hearing were cured by Chief Judge Dlott's setting it aside and holding a new hearing with new counsel.

Patton has not shown that Peter Rosenwald provided ineffective assistance of trial counsel.

**Scott Rubenstein**

After Mr. Rosenwald withdrew, Scott Rubenstein was appointed and represented Patton during the hearing on his second motion for new trial.

Essentially Patton's first claim against Rubenstein is that he was ineffective because he did not win the motion for new trial (Doc. No. 140, PageID 823). His only particular complaint is that Rubenstein did not bring up *Lafler v. Cooper*, 566 U.S. ___, 132 S. Ct. 1376, 182 L. Ed. 2d 398 (2012), and Rosenwald's failure to get a plea bargain. The substance of this claim is dealt with above.

Respecting Rubenstein's performance at sentencing, Patton claims Rubenstein could have reduced the amount of heroin for which Patton was being held responsible by subpoenaing co-defendant Lester. *Id*. at PageID 824. But Patton offers no proof that Lester would have been willing to testify to that effect.

Patton principally focuses on Rubenstein's failure to argue that Patton was qualified to be sentenced under the "safety valve" provision, 18 U.S.C. § 3553(f), if:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;

>(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
>(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

The defendant bears the burden of proving his eligibility for safety valve treatment by a preponderance of the evidence. *United States v. Patton*, 2013 U.S. App. LEXIS 20507 (6th Cir. Oct. 2, 2013), *citing United States v. Salgado*, 250 F.3d 438, 459 (6th Cir. 2001).

Patton's claim of ineffective assistance of trial counsel for failure to raise the safety valve question was presented on direct appeal, but the Sixth Circuit declined to consider it under its usual rule of deferring ineffective assistance of trial counsel claims to § 2255 proceedings and because the record was not sufficiently developed. *Patton, supra,* at \*\*17-18.

In its Answer, the Government argues Rubenstein was not ineffective in this regard because Patton was not qualified for safety valve treatment. First of all, Patton's conduct in attempting to flee from and elude the police prior to his arrest constitutes the use of violence. Although Patton was not charged with willfully fleeing and eluding, his conduct satisfies all the elements of that offense under Ohio Revised Code § 2921.331(B) and (C)(4) and the Sixth Circuit has held this offense constitutes a violent felony. *United States v. Yates,* 501 Fed. Appx. 505 (6th Cir. 2012). Patton's commission of the acts constituting willful fleeing and eluding were

recited in the Presentence Investigation Report which Chief Judge Dlott adopted; the relevant facts are also found in her order denying a new trial (Order, Doc. No. 97, PageID 317-318). Patton has not disputed this argument because, as noted above, he failed to file a reply to the Government's Answer.

The Government also asserts Patton fails to satisfy the fifth element of the safety valve provision by "truthfully provid[ing] to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan. . ." Mr. Rosenwald testified at the hearing on motion for new trial that he had made Patton aware of this requirement. *Patton, supra,* at **15. But this never happened. Indeed, as Chief Judge Dlott noted at sentencing, Patton never conceded his guilt of the offense at all. *Id.* at ** 8.

Because Patton did not qualify for safety valve treatment, it was not ineffective assistance of trial counsel to fail to argue for it. It cannot be deficient performance in an attorney to fail to make an argument which is not legally justified.

Patton has not shown that Scott Rubenstein provided ineffective assistance of trial counsel.

**Andrew Avellano**

Andrew Avellano was appointed to represent Patton on appeal to the Sixth Circuit. As with all of the other attorneys who represented him in this case, Patton asserts Avellano provided ineffective assistance.

9

A criminal defendant is entitled to effective assistance of counsel on appeal as well as at trial, counsel who acts as an advocate rather than merely as a friend of the court. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988); *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008). The *Strickland* test applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp,* 483 U.S. 776 (1987). To evaluate a claim of ineffective assistance of appellate counsel, then, the court must assess the strength of the claim that counsel failed to raise. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011), *citing Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). Counsel's failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal. *Id*., *citing Wilson.* If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel. *Id., citing Wilson.*

The appellate attorney need not advance every argument, regardless of merit, urged by the appellant. *Jones v. Barnes*, 463 U.S. 745, 751-752 (1983)("Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.") Effective appellate advocacy is rarely characterized by presenting every non-frivolous argument which can be made. *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Williams v. Bagley,* 380 F.3d 932, 971 (6th Cir. 2004), *cert. denied,* 544 U.S. 1003 (2005); see *Smith v. Murray*, 477 U.S. 527 (1986).

Patton first complains that Avellano did not raise a racial discrimination or fair cross-section argument on appeal in that there were no African-Americans in the venire called for trial (Amended Motion, Doc. No. 140, PageID 817). Patton relies on *Batson v. Kentucky*, 476 U.S.

79 (1986), but that case is inapposite because it involved use of a peremptory challenge to remove African-American prospective jurors which did not happen in this case.

The Government argues this claim would have been unavailing if it had been raised because the venire was pulled using this Court's jury selection plan which must be and had been approved by the Sixth Circuit Judicial Council.

This claim was argued to Chief Judge Dlott at the outset of trial. Mr. Rosenwald made the claim under *Duren v. Missouri*, 439 U.S. 357, 364 (1979) (Trial Tr., Doc. No. 125, PageID 463). He acknowledged that Defendant was required to prove, as one prong of the relevant constitutional test, that African-Americans had been systematically excluded. *Id.* At trial, the Government argued that the relevant law was provided by the federal Jury Selection and Service Act, 28 U.S.C. § 1867(a).

In ruling on the motion to dismiss the venire, Chief Judge Dlott relied on *United States v. Allen*, 160 F.3d 1096 (6th Cir. 1998), *United States v. Odeneal*, 517 F.3d 406 (6th Cir. 2008), and *Taylor v. Louisiana*, 419 U.S. 522 (1975). She held that Patton was required to show in particular that "underrepresentation is due to systematic exclusion of the group in the jury selection process" and that he had not done so (Trial Tr., Doc. No. 125, PageID 471).

In asserting that Mr. Avellano provided ineffective assistance of appellate counsel in failing to raise this issue on appeal, Patton provides no additional evidence which was in the record on which Avellano could have relied nor any case law to contravene what Chief Judge Dlott cited. It is, of course, not ineffective assistance of appellate counsel to fail to make an argument which certainly would have failed before the court of appeals.

Having developed the racial discrimination in jury selection claim at some length in his Amended Motion, Mr. Patton adds a grab bag of issues which he believes should have been raised:

> Petitioner statement to that is, of all the issues and claims why Mr. Avellano did not see the errors or constitutional rights violations, new trial motion conflict of interest, suppression hearing, second new trial motion, the first New Trial hearing was a shamble of a hearing in itself violated Defendant's Sixth and Fifth Amendment rights, right to counsel in all critical stages of defendant's proceedings Fifth Amendment right against self-incrimination.
>
> Defendant's arrest and Jurisdiction issues, improperly held in the State of Ohio custody for months on Home Confinement, a drug trafficking charge of Interstate Transportation, Misrepresentation of the Truth by an officer of the LAW, and Tampering with Evidence.
>
> All "CLAIMS" ready ofr [sic] Direct Appeal.

(Amended Motion, Doc. No. 140, PageID 818.)

Patton has not shown either by citation to record evidence or by citation to relevant law that any of these issues would have probably been successful on appeal or were stronger than the issues actually raised.

As to the Fifth and Sixth Amendment claims and the conflict of interest assertion, Chief Judge Dlott cured whatever violation of constitutional rights might have occurred in the first new trial hearing by disregarding any of Patton's statements made at that hearing, appointing new counsel, and hearing the motion anew.

As to the "jurisdiction" claim, there is no doubt that possession with intent to distribute heroin in the quantity possessed by Patton (almost one-half kilogram) is a violation of both

federal and Ohio law. The fact that Patton was initially held under Ohio law does not in any way compromise his eventual prosecution and conviction under federal law.

Patton presents no evidence that the evidence against him was tampered with. His argument about the truthfulness of the law enforcement officer who testified against him is a credibility issue properly addressed to the trier of fact; that the jury chose to believe the officer instead of Patton was not an issue which could have been successfully raised on appeal.

In sum, Patton has not shown he received ineffective assistance of appellate counsel from Mr. Avellano.

Conclusion

In accordance with the foregoing analysis, it is respectfully recommended that Mr. Patton's § 2255 Motions, both the original and the Amended Motion, be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous.

May 19, 2014.

s/ *Michael R. Merz*
United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ.

P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).